# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

EZRA BRADY,                                                    PLAINTIFF,

VS.                                       CIVIL ACTION NO. 4:08CV102-P-S

GEORGIA-PACIFIC CORPORATION,                                   DEFENDANT.

## MEMORANDUM OPINION

This matter comes before the court upon the defendant's motion for summary judgment [44]. After due consideration of the motion and the responses filed thereto, the court is prepared to rule.

### I. FACTUAL BACKGROUND

On March 11, 1985 Georgia-Pacific hired Ezra Brady in the Process Support department at their Grenada, Mississippi plant which manufactures OSB (Oriented Strand Board). In 1991 Georgia-Pacific promoted Brady to Process Supervisor, supervising twenty-one employees. Since 1991 Brady has been fourth in command at Georgia-Pacific's Grenada plant, being the highest ranking manager of the plant at times during nights and weekends.

On March 23, 2006 Georgia-Pacific terminated Brady's employment for a safety violation that occurred the day before. Plant Manager Troy Brown wrote in the Disciplinary Notice of discharge:

> Ezra was responsible for instructions that led to gross lock-out violation. One employee involved in lock-out violation asked Ezra on 2 occasions about the integrity of the procedure used; in both incidences employee was instructed to use improper lock-out procedure. In no way was energy source isolated. Employees were at risk in task they were performing.

March 23, 2006 Employee Disciplinary Notice.

Essentially, the lock-out procedure requires a piece of heavy machinery to be physically "locked-out" with cables and pad locks to avoid the possibility that the power is turned on while a person is working on the machine.

The safety rules contained in the employee handbook require employees to "Lock-out the machine on which your [sic] are working before attempting to make repairs, clear a jam, clean or service parts. The Buddy Protection System insures lockouts by requiring the involvement of two people for any lockout situation." Georgia-Pacific Corporation, Grenada OSB's Member Handbook at p. 8, ¶ 21 (emphasis added). It is undisputed that Brady signed a document on March 10, 2006 – twelve days before the subject incident – indicating that he "received, read, and underst[ood] the content of the 2006 Employee Handbook." Exhibit 8 to Plaintiff's Deposition.

It undisputed that Brady had received specific training on the requirements of the lock-out procedure as evidenced by Exhibits 10 and 11 to the plaintiff's deposition, the former showing that he participated in the training on October 25, 2005 - six months before the subject incident – and the latter showing that he took a quiz on the proper lock-out procedure on the same date. Furthermore, Brady concedes that one of his main duties as a Process Supervisor is to ensure safety and that he received lock-out training on a yearly basis.

The plaintiff concedes the basic facts of the safety violation. In fact, the plaintiff conceded in his deposition that "I knew it wasn't – I knew it wasn't by the letter of the law. I knew this. So I'm not going to fight a battle that – that I knew was wrong." Plaintiff's Deposition at p. 110. Rather, the plaintiff argues that he should have only been suspended and not terminated for a first offense.

The plaintiff filed an EEOC Complaint, alleging that he had been terminated as a result of race discrimination since he was terminated for a first offense, while two white employees at the

Fordyce, Arkansas plant were only suspended for the same offense. After receiving notice that the EEOC found reasonable cause to believe Georgia-Pacific racially discriminated against him, the plaintiff filed the instant action on July 28, 2008 asserting race discrimination claims under Title VII, 42 U.S.C. § 2000e-5 and 42 U.S.C. § 1981.

The defendant has moved for summary judgment, arguing that the plaintiff's claims should be dismissed for failure to meet a *prima facie* case of race discrimination since the plaintiff cannot show that there were similar instances wherein a white person was treated more favorably in "nearly identical" circumstances. The defendant argues in the alternative that they discharged the plaintiff for a legitimate, nondiscriminatory reason – *i.e.*, for a willful safety violation – and that the plaintiff cannot show that this reason was a pretext for racial discrimination.

The plaintiff responds that he was terminated for violating the same rule for which two other white managers at the Fordyce, Arkansas plant were only suspended. A first offense should have resulted in an automatic three-day suspension and termination on a second violation within twelve months. The plaintiff argues that the same decisionmaker, Troy Brown, was involved in all three instances and that the circumstances regarding the two white employees were nearly identical to the plaintiff's.

## II. DISCUSSION

### A. Summary Judgment Standards

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d 1026, 1031 (5th Cir. 1982); *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that

4

there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id*. at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id*. at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978).

## B. Race Discrimination Claims

### a. § 1981

Pursuant to 42 U.S.C. § 1981, it is unlawful to discriminate based on race in making and enforcing contracts, including employment contracts. "The term 'make and enforce contract' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Employees at-will may sue under § 1981 since the employee's promise to perform work for the employer in consideration for the employer's promise to pay the employee constitutes a contract within the meaning of § 1981. *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.*, 160 F.3d 1048 (5th Cir. 1998). "Under § 1981 as amended by the [1991] Act, *racial harassment and other discrimination* in an employment relation occurring *after contract formation* is actionable." *Felton*

*v. Polles*, 315 F.3d 470, 483 (5th Cir. 2002) (emphasis in original) Ultimately, § 1981 requires proof of discriminatory intent. *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 583 n.16 (1984).

The Fifth Circuit has ruled that "[u]sually, racial harassment is thought of in terms of Title VII [and] [a]long this line, our court has relied on Title VII principles for guidance in parallel § 1981 actions." *Felton*, 315 F.3d at 483.

Accordingly, this court will view the plaintiff's claims under § 1981 in the same light as her Title VII claims.

**b. Title VII**

Title VII prohibits discrimination based on race. 42 U.S.C. § 2000e-2(a). "Title VII discrimination can be established through either direct or circumstantial evidence" and when a case is based on circumstantial evidence, the court should look to the *McDonnell Douglas* test. *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

"Under this framework, the plaintiff must first create a presumption of discrimination by making out a prima facie case of discrimination." *Laxton*, 333 F.3d at 578. (internal citations omitted).

For the instant plaintiff, a prima facie case of race discrimination requires proof that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subjected to an adverse employment action because of his race; and (4) similarly-situated individuals of another race were treated more favorably. *See McDonnell Douglas v. Green*, 411 U.S. 792 (1973).

"The burden then shifts to the employer to produce a legitimate, nondiscriminatory reason for [the adverse employment action]. This causes the presumption of discrimination to dissipate."

*Laxton*, 333 F.3d at 578.

"The plaintiff then bears the ultimate burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally discriminated against her because of her protected status." *Laxton*, 333 F.3d at 578. (internal citations omitted). The court in *Laxton* instructs:

> To carry this burden, the plaintiff must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination. The plaintiff must rebut each nondiscriminatory reason articulated by the employer. A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or "unworthy of credence." An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action. Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive. No further evidence of discriminatory animus is required because "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation...." ... The "rare" instances in which a showing of pretext is insufficient to establish discrimination are (1) when the record conclusively reveals some other, nondiscriminatory reason for the employer's decision, or (2) when the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue, and there was abundant and uncontroverted evidence that no discrimination occurred. A decision as to whether judgment as a matter of law is appropriate ultimately turns on " 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.' "

*Laxton*, 333 F.3d at 578-579. (internal citations omitted).

### c. Prima Facie Case

Regarding the *prima facie* elements, there is no dispute that the plaintiff meets the first three. The defendant, however, argues that the plaintiff cannot establish the element requiring a showing that similarly-situated individuals of another race were treated more favorably. To establish disparate treatment a plaintiff must show that the employer "gave preferential treatment to ...

[another] employee under 'nearly identical' circumstances...." *Okoye v. University of Texas Houston Health Science Center*, 245 F.3d 507, 514 (5th Cir. 2001).

The plaintiff argues that although he was not aware of any white employees that were treated more favorably in nearly identical circumstances at the Grenada plant, he alleges that two white employees at the Fordyce, Arkansas plant were not terminated after committing lock-out safety violations.

Claes Rossby is a Plant Supervisor and Charles Jones is a Area Manager for Georgia-Pacific's plant in Fordyce, Arkansas. Both men are white.

Rossby received a three-day suspension for a lock-out violation. To make a repair, Rossby reached far enough into a conveyor to have required a lock-out. There were no other employees involved. The plant manager of the Fordyce plant, Jim Upp, avers that he suspended Rossby because the violation was not willful, or did it endanger other employees. In his response to the defendant's motion for summary judgment, the plaintiff concedes that Rossby's situation was different in that there were no employees involved. The court concludes that these are not "nearly identical" circumstances; therefore, Claes Rossby is not a proper comparator for the plaintiff's *prima facie* case of race discrimination.

Charles Jones is an Area Manager at the Fordyce plant. Jones and two other employees were inspecting a bag house to determine needed repairs. One employee threw the breaker to the machine and asked Jones and the other employee if they had a lock. Jones states that although the situation required a lock-out under normal circumstances, he believed it was an acceptable common practice that if a manager was supervising a repair, such as he was over the two other employees, a lock-out was not necessary. Plant Manager Upp suspended Jones for three days.

The defendant argues that Jones is not a proper comparator because (1) he worked at a different plant; (2) he believed, though wrongly, that a lock-out was not necessary since he was a manager supervising other employees, whereas the plaintiff did not cite such a practice and admitted that he knew that his actions violated the lock-out policy; and (3) a different decision-maker was involved – Jim Upp, the Plant Manager at the Fordyce plant – rather than Troy Brown, the Plant Manager at the Grenada plant. The plaintiff argues that in addition to being the Plant Manager at the Grenada plant, Troy Brown is also the Operations Manager at the Fordyce plant and approved Fordyce Plant Manager Upp's decision to suspend, and not terminate, Rossby and Jones. However, the plaintiff cites no evidence to support this contention, nor does he show substantial evidence rebutting Brown and Upp's contentions that Upp is responsible for discipline at the Fordyce plant.

The defendant also argues that the Rossby and Jones situations occurred in early 2005 before Koch acquired Georgia-Pacific in late 2005. According to the defendant, with the acquisition by Koch came a heightened commitment to enforcement of safety violations. The plaintiff argues that this reason had never been mentioned during three years of litigation until now and therefore is evidence of pretext since the defendant appears to be changing its reason for termination. The defendant counters that the heightened safety enforcement is not a new reason for the termination; rather, it is another reason why the Rossby and Jones situations were different than the plaintiff's.

The defendant maintains Troy Brown terminated the plaintiff because of his opinion that the plaintiff's violation was willful, since he knew it was improper before doing it, thereby constituting a "willful violation of company policy," a specific ground for termination in the Employee Handbook. The plaintiff does not aver that he believed that he thought there was an exception since he was a manger supervising other employees. In any event, the decision-maker in the plaintiff's

9

case was Troy Brown, not Jim Upp at the Fordyce plant. The defendant also argues that two other employees and a third-party contractor (who was not familiar with Georgia-Pacific's lock-out protocol) were endangered, which constituted a "violation of safety procedures which results, or is likely to result, in injury or fatality," another terminable offense according to the Employee Handbook. The plaintiff argues that the worst that could have happened is that large fans 300 feet away would have been engaged, creating a wind force of approximately 20-25 mph. The defendant counters that this could have caused an employee to lose his balance and fall, thereby likely resulting in an injury.

In any event, the Fifth Circuit has ruled that "[m]anagement does not have to make proper decisions, only non-discriminatory ones." *Bryant v. Compass Group USA, Inc.*, 413 F.3d 471, 478 (5th Cir. 2005). Indeed, "even an incorrect belief than an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason" for termination." *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991). The plaintiff has cited no evidence of racial animus – no racial remarks, no disparity of minority hiring at Georgia-Pacific plants, etc. Rather, he relies on the sole fact that two other white employees were suspended rather than terminated for lock-out violations. However, even after viewing the facts in a light most favorable to the plaintiff, the evidence does not create a genuine issue of material fact that the situations of Rossby and Jones were "nearly identical." These men worked at a different plant, engaged in different lock-out violations, and, importantly, were disciplined by a different decision-maker. Though the plaintiff alleges, without citing evidence, in his response that Grenada Plant Manager Troy Brown was the same decision-maker who disciplined Rossby and Jones at the Fordyce plant since Brown was also the Operations Manager there, the defendant is correct that conclusory allegations are insufficient to defeat a

10

properly supported motion for summary judgment. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) ("a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'").

The court concludes that the plaintiff has not presented sufficient evidence to create a genuine issue of material fact that others not in his "protected class" were similarly situated and were treated more favorably. Accordingly, the plaintiff cannot meet his burden to demonstrate a *prima facie* case of race discrimination.

Even if it were determined that he met the *prima facie* case, the court concludes that the defendant articulated a legitimate, non-discriminatory reason for his discharge and the plaintiff has demonstrated insufficient evidence to create a genuine issue of material fact that the reason given was a pretext for race discrimination. As admitted by the plaintiff, he knowingly failed to follow his employer's safety protocol regarding locking-out large machinery. His supervisor decided to discharge him for it, as allowed by the Employee Handbook. Since there is insufficient evidence to show race discrimination in the discharge, Georgia-Pacific legally exercised its option to discharge an at-will employee.

### III. CONCLUSION

For the reasons discussed above, the court concludes that after viewing the facts in a light most favorable to the plaintiff, the plaintiff has submitted insufficient evidence to warrant a trial on his race discrimination claims. The defendant's motion for summary judgment [44] should be granted and the plaintiff's claims should be dismissed with prejudice. Accordingly, a Final Judgment shall issue forthwith,

**THIS DAY** of August 4, 2009.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE